**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **LANG NATURALS, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ISS RESEARCH, LLC,**<br><br>**Defendant.** | **C.A. No. 07-275-S** |

**DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION OR TRANSFER VENUE TO THE WESTERN DISTRICT OF NORTH CAROLINA**

Defendant ISS Research, LLC ("ISS") hereby moves to dismiss the instant action brought by Plaintiff Lang Naturals, Inc. or, in the alternative, to stay the action or transfer it pursuant to 28 U.S.C. § 1404(a) to the Western District of North Carolina, where a previously filed and identical action entitled ISS Research, LLC v. Lang Naturals, Inc., C.A. No. 3:07-cv-00242-RJC-CH is already pending.

In support hereof, ISS relies on the memorandum of law and Declaration of Ronald McAfee, Jr. filed herewith.

Respectfully submitted this 7th day of September, 2007.

/s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
Joseph V. Cavanagh, III #6907
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
jvc@blishcavlaw.com
ker@blishcavlaw.com
jvc3@blishcavlaw.com

**ATTORNEYS FOR DEFENDANT ISS RESEARCH, LLC**

**OF COUNSEL:**

Lawrence C. Moore, III
N.C. Bar No. 21731
Seth W. Whitaker
N.C. Bar No. 32999

**ROBINSON, BRADSHAW & HINSON, P.A.**
One Independence Center, Suite 1900
101 North Tryon Street
Charlotte, North Carolina 28246
(704) 377-2536 (phone)
(704) 378-4000 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on this 7th[th] day of September, 2007, an exact copy of the within document was electronically submitted to the Electronic Case Filing System of the United States District Court for its distribution to all counsel of record as follows:

Robert K. Taylor, Esq.
rkt@psh.com

/s/ Joseph V. Cavanagh, III
of Blish & Cavanagh LLP

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **LANG NATURALS, INC.,** <br> **Plaintiff,** <br> **v.** <br> **ISS RESEARCH, LLC,** <br> **Defendant.** | **C.A. No. 07-275-S** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THE ACTION OR TRANSFER VENUE TO THE WESTERN DISTRICT OF NORTH CAROLINA**

Defendant ISS Research, LLC ("ISS") submits the within memorandum of law in support of its motion to dismiss the instant action brought by Plaintiff Lang Naturals, Inc. ("Lang Naturals") or, in the alternative, to stay the action or transfer it pursuant to 28 U.S.C. § 1404(a) to the Western District of North Carolina, where a previously filed and identical action (the "North Carolina Action") is already pending.[1]

Lang Naturals' Complaint in Rhode Island ("RI Complaint") represents simple forum-shopping. Lang Naturals filed its RI Complaint only one business day after ISS filed its Verified Complaint in North Carolina ("NC Complaint"), and the RI Complaint is nearly an identical word-for-word copy of the counterclaim that Lang Naturals has already asserted in the North Carolina Action ("NC Answer" or "NC Counterclaim"). Copies of the NC Complaint and the NC Answer and Counterclaim are attached hereto as Exhibits 1 and 2, respectively. A Copy of the RI Complaint is attached hereto as Exhibit 3.

[1] In further support of its motion, ISS files herewith the Declaration of Ronald McAfee, Jr. ("McAfee Dec."). The McAfee Dec. bears the title "Affidavit of Ronald McAfee, Jr." but ISS hereby acknowledges that the document constitutes a declaration pursuant to 28 U.S.C. § 1746.

The First Circuit and District Courts of Rhode Island have made clear that such forum-shopping is not permitted. Thus, in the absence of an affirmative showing by Lang Naturals that a Rhode Island forum is clearly preferable, this second-filed action should be dismissed.

Lang Naturals has no justifiable basis to have brought this second-filed action here in Rhode Island. As set forth herein, this Court should summarily dismiss this action because: (1) the instant matter is identical to the earlier filed North Carolina Action; (2) the balance of convenience actually favors resolution of this action in the Western District of North Carolina; and (3) no "special circumstances" exist that would justify disregarding the strong presumption favoring the first-filed North Carolina Action. In the alternative, this Court should transfer this action to the Western District of North Carolina, or stay this action, on the same grounds.

## I. FACTS[2]

### A. Parties Relevant to the Dispute

This case involves dealings between and among three businesses in the growing field of sports nutrition products. As explained in the verified NC Complaint, ISS is a North Carolina limited liability company with its principal place of business in Charlotte, North Carolina. NC Compl./Ans. ¶ 3[3]. ISS sells sports nutrition products, including the "Oh Yeah" brand of high-protein bars. Id., ¶ 1. Lang Naturals is a Rhode Island corporation with its principal place of business in Middletown, Rhode Island. Id., ¶ 4. Lang Naturals develops and sells food products such as high protein food bars and beverages. RI Complaint, ¶ 1, NC Counterclaim, ¶ 1. Third-party Jasper Products, LLC is a Missouri limited liability company with its principal place of

[2] This Court may properly accept and consider evidence outside the pleadings on this motion to dismiss, stay or transfer for improper venue. See Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004); see also, Computer Assistance, Inc. v. Morris, 564 F. Supp. 1054, 1057 (D. Conn. 1983) and Car-Freshner Corp. v. Auto Aid Mfg. Corp., 438 F. Supp. 82, 85 (N.D.N.Y. 1977).

[3] ISS cites particular paragraphs of its North Carolina Complaint, and Lang Naturals' corresponding responses in its North Carolina Answer, collectively by use of the following joint citation: "MA Compl./Ans. ¶ __."

business located in Joplin, Missouri.

**B. Background**

In early 2006, ISS retained Basil Hilts as a consultant. NC Complaint, ¶ 7. Hilts, who was then doing business under the name Nutragenix, has expertise in the commercialization of nutritional products. Id. He works out of ISS's office in North Carolina an average of two to three days per week. McAfee Dec., ¶ 3. In June 2006, Hilts became an ISS employee. NC Complaint, ¶ 7.

Early in 2006, Hilts met with representatives of Lang Naturals at its office in Rhode Island. NC Complaint, ¶ 9. During the meeting, Lang indicated an interest in providing products to ISS, including a beverage, and asked Hilts if he knew of projects on which Lang Naturals could work with ISS. Id. Hilts informed Ronald McAfee, Jr., ISS's president and a resident of North Carolina, of Lang Naturals' interest. Id., ¶ 10, McAfee Dec., ¶ 2. Hilts and McAfee met with representatives from Lang Naturals on March 6, 2006. NC Complaint, ¶ 10. Lang Naturals represented that it was familiar with the market for sports nutrition products and that it was a low-margin, high-volume business that could develop and sell products to ISS at least as cheaply as if ISS purchased directly from manufacturers. Id.

McAfee informed Lang Naturals that ISS was interested in producing an "Oh Yeah" brand high-protein, moderate-carbohydrate, low-fat, low-acid meal replacement beverage (also referred to as a shake or an "RTD" or a "ready-to-drink" product) and pudding. Id., ¶ 11. It provided Lang Naturals with nutritional targets for these products. Id. ISS also indicated that it wanted any RTD product it might purchase to be packaged in plastic bottles. Id. at 12.

In April 2006, Lang Naturals sent ISS a proposed Product Supply Agreement. Id. ¶ 15. ISS never signed the agreement because under the proposed agreement Lang Naturals would retain ownership of any formula, ISS would be banned from doing business with the companies manufacturing for Lang Naturals (who were not to be disclosed to ISS), and ISS would guarantee purchase of specified volumes of product from Lang Naturals. Id. ISS also regarded Lang

Naturals' price as too high. Id. In fact, Lang Naturals never quoted a price on beverages or puddings that would allow ISS to sell them at a price comparable to that charged for other sports nutrition RTD shakes or puddings. Id., ¶ 16.

Jasper, a key player in the ISS / Lang Naturals dispute, is a beverage manufacturer able to produce a high-protein, low-acid beverage in plastic containers. Id., ¶ 17. Despite ISS's refusal to sign the proposed Product Supply Agreement and rejection of the Lang Naturals samples, Lang Naturals (without ISS's knowledge) represented to Jasper in August 2006 that ISS was a customer of Lang Naturals'. Id. Jasper therefore agreed not to manufacture any products for ISS, of any type. Id. Lang Naturals never indicated to ISS that Jasper was a supplier to Lang Naturals, or even mentioned Jasper to ISS at all. Id.

Lang Naturals volunteered to continue providing sample products to ISS in the absence of an agreement governing the development or supply of any products, in an attempt to persuade ISS to purchase products from it. Id., ¶ 18. Lang Naturals sent its samples to ISS in Charlotte. Id. At no point did ISS agree to pay Lang Naturals for the costs of developing the samples. Id. To the contrary, Lang Naturals indicated that it was not charging ISS for developing the samples. Id.

In September 2006, three representatives of Lang Naturals came to Charlotte to meet with ISS. Id., ¶ 19; McAfee Dec., ¶ 4. ISS again told Lang Naturals at that meeting that the Proposed Supply Agreement was not acceptable. NC Complaint, ¶ 19. In response, Lang Naturals indicated it would provide a revised draft agreement, but never did so. Id.

ISS had requested early on to be involved in the process of formulating products for its "Oh Yeah" brand. Id., ¶ 22. Lang Naturals refused to allow ISS to participate. Id. In the fall of 2006, for the first time, Lang Naturals provided to ISS a proposed list of ingredients for its RTD beverage. Id. ISS then learned that Lang Naturals proposed to make the beverage with maltitol—a form of sugar alcohol. Id. ISS informed Lang Naturals that it could not at that time

successfully sell a beverage with maltitol in the sports nutrition market—which Lang Naturals should have known based on its professed experience. Id.

Lang Naturals sent more sample beverages without sugar alcohol, but ISS and its biggest customer, Europa Sports Products, Inc. ("Europa"), found them to be unacceptable. Id., ¶ 23. Europa, a North Carolina corporation with its principal place of business in Charlotte, is a national distributor of sports supplements. McAfee Dec., ¶ 5.

One of ISS's ingredient suppliers told ISS that Jasper could produce an RTD high-protein beverage, and could do so in a plastic container. Id., ¶ 24. Thomas Morley, an independent formulator with whom ISS works, later offered to set up a meeting between ISS and Jasper. Id. Morley resides in or around Detroit, Michigan. McAfee Dec., ¶ 6.

At the meeting, held on Friday, May 11 2007, Jasper's president, Kenneth Haubein, who resides in or around Joplin, Missouri, expressed enthusiasm for the "Oh Yeah" bars, and indicated a willingness to supply ISS with a shake made with UF (ultrafiltered) milk. McAfee Dec., ¶ 7; NC Complaint, ¶ 25. At no time did Lang Naturals offer to provide ISS a shake made with UF milk. Id. Jasper also indicated that it was producing a beverage not made with UF milk at a price that ISS knew to be significantly less than that quoted by Lang Naturals to ISS. Id., ¶ 26. The price indicated by Jasper would be sufficiently low for ISS to provide a competitive price to its customers. Id.

The Monday following the meeting with Jasper, Haubein told ISS that Lang Naturals had learned of the meeting between Jasper and ISS, and had objected on the basis of the agreement between Lang Naturals and Jasper. Id., ¶ 29. Hilts called Lang Naturals and asked that it release Jasper from the agreement, because ISS was not Lang Naturals' customer. Id., ¶ 30. Lang Naturals refused. Id.

On May 29, 2007, counsel for ISS wrote Lang Naturals again requesting that it immediately release Jasper from the agreement obtained by Lang Naturals' deception. Id., ¶ 31. A copy of the May 29 letter is attached hereto as Exhibit 4. By letter dated June 12, 2007, counsel for Lang Naturals responded, rejecting ISS's request, and asserted that ISS was "liable in damages for breach of contract, tortious interference with Lang Naturals' relationship with Jasper, and bad faith." Id., ¶ 32. Counsel for Lang Naturals also asserted that ISS owed it at least $122,621 for costs allegedly incurred in developing sample products. Id. The strongly-worded letter expressed no interest in, or reference to, settlement discussions between the parties. A copy of the June 12, 2007 letter is attached as Exhibit A to the McAfee Dec.

Over the course of the above-described dealings, David Lang and William Willis were the primary participants on behalf of Lang Naturals. McAfee Dec., ¶ 8. Lang is the president of Lang Naturals and Willis is Director of Account Management. Id. ISS had limited dealings with a third representative of Lang Naturals, Richard Lang, who is its vice president. Id.

### C. Procedural Posture

On June 22, 2007, ISS filed the NC Complaint against Lang Naturals in the United States District Court for the Western District of North Carolina, asserting eight separate causes of action. Claims One through Three arise under the Sherman Act, Claim Four is a claim under North Carolina's Unfair and Deceptive Trade Practices statute, Claim Five alleges tortious interference with prospective economic advantage and Claims Six through Eight are declaratory judgment counts involving breach of contract, tortious interference and bad faith, respectively. NC Complaint, ¶¶ 36-78. The North Carolina Action is entitled ISS Research, LLC v. Lang Naturals, Inc., C.A. No. 3:07-cv-00242-RJC-CH. Counsel for ISS sent counsel for Lang Naturals a copy of the NC Complaint on June 22, 2007. A copy of ISS counsel's cover letter enclosing the NC Complaint, transmitted by facsimile on June 22, 2007, is attached as Exhibit B

to the McAfee Dec.

Lang Naturals filed its Answer and Counterclaim in the North Carolina Action on August 31, 2007. (Ex. 2.) Lang Naturals' Counterclaim asserts claims in the North Carolina Action, as follows: alleged breach of contract (Count I); tortious interference with contract (Count II); unjust enrichment (Count III); and a claim under North Carolina's Unfair and Deceptive Trade Practices statute (Count IV). NC Counterclaim ¶¶ 9-26. The North Carolina Action remains pending.

On June 25, 2007, aware that ISS had initiated the North Carolina Action, Lang Naturals filed its instant Rhode Island Complaint in Rhode Island Superior Court. But for the absence of the statutory Unfair and Deceptive Trade Practices count, the RI Complaint is literally identical, word-for-word and from start to finish, to Lang Naturals' defensive and compulsory Counterclaim in the North Carolina Action. Compare RI Complaint with NC Counterclaim.[4] The Rhode Island Action has since been removed to this Court. Lang Naturals has offered no justification for this second-filed and identical action.

## II. ARGUMENT

It is well established that, "where two suits involve the same issues, and prosecution of both would entail duplicative litigation and a waste of judicial resources, the first-filed suit is generally preferred." SW Indus., Inc. v. Aetna Cas. & Sur. Co., 653 F. Supp. 631, 634 (D.R.I. 1987); see also, Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) . As this Court has recognized, the forum where an action is first filed is given priority over subsequent actions unless there is a showing of (1) balance of convenience in favor of the second action or (2) there are special circumstances which justify giving priority to the second. Id. (internal quotations and citations omitted). The burden is upon the defendant in the first-filed action –

[4] The other minor distinctions between the two filings is that the NC Counterclaim references federal as opposed to state jurisdiction and venue provisions, and the allegations appearing in the RI Complaint have been further sub-divided into more paragraphs in the North Carolina Counterclaim.

here Lang Naturals – to make the necessary showing to preserve jurisdiction in this action. See id.

Because the instant action is duplicative of the first-filed North Carolina Action, and Lang Naturals cannot meet its burden of showing either that the balance of convenience weighs in favor of litigating this case in Rhode Island or that special circumstances exist, this Court should dismiss the instant action, or, alternatively, transfer it to the Western District of North Carolina, or stay the action.

## A. The Instant Action is Identical to the Earlier Filed North Carolina Action.

The instant action is clearly "duplicative" of the first-filed North Carolina Action. The RI Complaint asserts what would be defenses (or compulsory counterclaims) to the NC Complaint. Fed. R. Civ. P. 13(a). The Rhode Island Complaint is in fact, but for an additional count, virtually identical to the counterclaim Lang Naturals has already asserted in the North Carolina Action.[5] The parties in the two cases are also identical, and the exact same witnesses and evidence will obviously be at issue in both cases as the exact same dispute, parties and facts are involved in both cases.

## B. The Balance of Convenience does Not Weigh in Favor of Adjudicating the Dispute Between Lang Naturals and ISS in this Forum.

While the preference for the first-filed action is not a per se rule, a strong presumption of priority attaches to the first-filed action. Feinstein v. Brown, 304 F. Supp. 2d 279, 283 (D.R.I. 2004). To overcome this strong presumption, the defendant in the first-filed action – here Lang Naturals – must show either that (1) the balance of convenience weighs in favor of the later-filed action; or (2) special circumstances justify giving priority to the second action. See id.

In weighing the balance of convenience, courts typically consider several factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the

---

[5] That the NC Counterclaim contains an additional claim, not appearing in the RI Complaint, brought under the North Carolina Unfair and Deceptive Trade Practices statute merely provides further support for permitting a court sitting in North Carolina to adjudicate this matter.

convenience of the witnesses and location of documents; (4) any connection between the forum and the issues; (5) the law to be applied; and (6) the state or public interest at stake. Feinstein, 304 F. Supp. 2d at 283 (citing The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 17 (D. Mass. 2002)).

Lang Naturals cannot show that litigating this dispute in Rhode Island would clearly be more convenient than litigating this dispute in North Carolina. Thus, Lang Naturals cannot overcome the strong presumption in favor of allowing the first-filed North Carolina Action to take priority over this second-filed action.

*i. The Plaintiff's Choice of Forum*

Lang Naturals' choice of forum in this later-filed case should not take precedence over ISS's choice of forum in the first-filed case. While a plaintiff's choice of forum is generally accorded great weight by courts, "this preference is inoperative in a later-filed action, where the plaintiff's claims would constitute compulsory counterclaims in the defendant's earlier-filed action." S.W. Industries, Inc. v. Aetna Casualty & Surety Co., 653 F.Supp. 631, 637 (D.R.I. 1987) (citing Leesona Corp. v. Duplan Corp., 317 F. Supp. 290, 299 (D.R.I. 1970)). The First Circuit has particularly discounted a plaintiff's choice of forum in a later-filed action where the plaintiff's choice of forum and timing of suit appear to be nothing more than a "quick response . . . to [the first-filed suit,] designed to get home-court advantage." Cianbro, 814 F.2d at 11 (upholding a district court's decision to transfer an action filed in New Hampshire where the later-filed New Hampshire action was duplicative of the first-filed Maine action and was filed only a short time after the Maine action).

Lang Naturals' claims in the instant action would clearly be compulsory counterclaims in the first-filed North Carolina Action, as they arise out of the exact same course of dealings

between the parties that underlie the claims set forth in ISS's NC Complaint. See Fed. R. Civ. P. 13(a). Additionally, Lang Naturals' decision to bring the instant action in Rhode Island the very next business day after receiving notice of the North Carolina Complaint is nothing more than forum-shopping aimed at achieving "home-court advantage." Thus, Lang Naturals' choice of forum in the instant action should not be afforded any weight.

*ii. The Convenience of the Parties*

ISS maintains its principal place of business in Charlotte, North Carolina. Lang Naturals is based in Rhode Island. Thus, the convenience of the parties factor is even.

*iii. The Convenience of the Witnesses and the Location of the Documents*

The locations of the witnesses to this dispute favors a North Carolina forum. With respect to party witnesses, McAfee and Hilts, on behalf of ISS, reside or work in Charlotte, while Lang and Willis, on behalf of Lang Naturals, presumably reside in or around Rhode Island.

However, with respect to third-party witnesses, the balance tips in favor of the North Carolina forum. First, it is clear that Jasper will be a key, if not indispensable, party to this dispute. Both parties have included multiple allegations in their pleadings regarding Jasper and its business dealings with the opposition. ISS makes repeated express references to Jasper, while Lang Naturals refers to "a company used by Lang [Naturals] to manufacture its nutritional products," which is clearly understood to refer to Jasper. NC Counterclaim, ¶ 8. Furthermore, it was the May 2007 meeting between Jasper and ISS that arguably sparked this litigation. In short, the parties' duties and obligations with respect to Jasper are at the heart of the dispute. Both Jasper and Haubein, its president who engaged in discussions with ISS, are located in Joplin, Missouri. Joplin is approximately 975 miles from Charlotte and approximately 1450 miles from Providence, making North Carolina a more convenient venue with respect to Jasper.

Second, as ISS's biggest customer and one that found Lang Naturals' sample products unacceptable, Europa, is another key player in this dispute and one likely to be subpoenaed as a third-party witness. Europa's principal place of business is in Charlotte, making North Carolina a more convenient location with respect to Europa.

Third, Thomas Morley, who set up the May 2007 meeting between ISS and Jasper, is another probable third-party witness. Morley lives in or around Detroit, Michigan, which is approximately 665 miles from Charlotte and 700 miles from Providence, making North Carolina at least as convenient forum as Rhode Island.

Furthermore, ISS's relevant documents are in Charlotte minutes from the Federal Courthouse. Upon information and belief, the relevant documents possessed by each of the key third-parties reside at their respective locations discussed above. Thus, litigating this dispute in Rhode Island, rather than in North Carolina, would be less convenient for the witnesses and for document production.

Thus, this factor favors a North Carolina forum.

*iv. The Connection Between the Forum and the Issues*

North Carolina bears a strong connection to the facts and issues in this dispute. The dispute involves sample products sent to ISS's office in Charlotte. Those same sample products were, in-turn, presented to ISS's biggest customer, also located in Charlotte. While the parties participated in meetings both in North Carolina and Rhode Island, it was at the September 2006 meeting in North Carolina that Lang Naturals again presented the Proposed Supply Agreement for consideration by ISS. Insofar as Lang Naturals never provided a revised draft of the agreement as it indicated it would, this rejection of the Lang Naturals contract represented a key decision point in the discussions between the parties. That these key corporate decisions – the

review of Lang Naturals' products and rejection of its proposed contract – occurred in North Carolina militates toward North Carolina as the preferred venue. See Schmidt v. Am. Inst. of Physics, 322 F. Supp. 2d 28, 33 (D.D.C. 2004) (finding that Maryland bore a strong connection to a breach of contract action where the decisions giving rise to the plaintiff's complaint were made in Maryland and communicated to the plaintiff in Maryland).

Thus, this factor favors a North Carolina forum.

*v. The Law to Be Applied*

As noted above, the corporate decisions regarding the acceptance or non-acceptance of both the Lang Naturals sample products and its Proposed Supply Agreement were made by ISS in North Carolina. The products were sent to ISS in Charlotte and the proposed agreement presented in unrevised form to ISS in Charlotte. These events constitute the heart of Lang Naturals' breach of contract and unjust enrichment claims, which rest on Lang Naturals' position that ". . . ISS refused to enter into a supply contract with Lang [Naturals] . . . and refused to pay the development costs." NC Counterclaim, ¶ 20. They occurred in Charlotte and North Carolina law should apply.

Moreover, the allegations raised by Lang Naturals regarding ISS's alleged tortious interference with the Jasper / Lang Naturals relationship and Lang Naturals' related claim under the North Carolina Unfair and Deceptive Trade Practices statute, however lacking in merit, should also be governed by North Carolina law as the conduct giving rise to those claims occurred within that state. Alternatively, they conceivably could be governed by Missouri law, but in either case, not by Rhode Island law.

Thus, this factor favors a North Carolina forum.

*vi. The State or Public Interest at Stake*

North Carolina has a significant interest in resolving this dispute. The parties' duties and obligations with respect to their proposed business relationship should be governed by North Carolina law as should their related tort claims and dueling counts brought under the North Carolina Unfair and Deceptive Trade Practices statute. A federal court sitting in North Carolina may be presumed to have greater familiarity with North Carolina law than a federal court sitting in a different district. See Paradis v. Dooley, 774 F. Supp. 79, 83 (D.R.I. 1991). Thus, even though portions of the negotiations between the parties occurred in Rhode Island, the public interest weighs in favor of allowing this dispute to be resolved in North Carolina. Schmidt 322 F. Supp. 2d at 35 ("the public interest is 'best served by having a case decided by the federal court in the state whose laws govern the interests at stake.'") (quoting Trout Unlimited v. Dep't of Agric., 944 F. Supp. 13, 19 (D.D.C. 1996)).

This factor, therefore, favors North Carolina, which as a procedural matter weighs in favor of allowing the first-filed North Carolina Action to take priority over the instant action.

*vii. Summary of Convenience Factors*

In sum, all of the balance of convenience factors are either equal or weigh in favor of the first-filed North Carolina Action. This action thus clearly should be litigated in North Carolina. Indeed, courts routinely give preference to first-filed actions in cases in which the balance of convenience factors are far more neutral than in the present case. See, e.g., J. Lyons & Co. Ltd. v. The Republic of Tea, Inc., 892 F. Supp. 486, 492 (S.D.N.Y 1995) (dismissing action in favor of prior suits because the balance of convenience did not weigh sufficiently in favor of the second filed action); Leesona Corp., 317 F. Supp. at 299-02 (transferring second-filed action in favor of first filed action where factors were mixed); S.W. Indus., 653 F.Supp. at 637 (staying

the second-filed proceeding where the balance of convenience factors were roughly even); Cianbro, 814 F. 2d at 11 (upholding transfer of second-filed action to venue of the first filed action where convenience of the parties and witnesses was inconclusive).

**C. No Special Circumstances Exist which Overcome the Strong Presumption in Favor of the First-Filed North Carolina Action.**

Courts have recognized a second exception to the first-filed rule where "special circumstances" exist which justify giving priority to the second-filed suit instead of to the first. That is, when the first-filed action is the result of a preemptive "race to the courthouse," a court may allow a later-filed case to proceed in place of the first-filed action. See Cianbro, 814 F.2d at 11. However, where the first-filing party "neither misled [the other party] into foregoing litigation in order to negotiate a settlement and then filed suit, nor reacted to [the other party's] notice of imminent filing by 'literally sprinting to the courthouse the same day,'" the circumstances do not warrant dispensing with the presumption in favor of the first-filed action. See Feinstein, 304 F. Supp. 2d at 283.

Here, ISS did not mislead Lang Naturals into delaying or foregoing litigation after receiving Lang Naturals' counsel's June 12, 2007 letter, nor did it turn around and file the North Carolina action on the same day or even within the same week. Instead, it reacted prudently to a firm rejection of its May 29 request that Jasper be released from Lang Naturals' control – a rejection devoid of any invitation or even reference to settlement dialogue – by promptly, though not immediately, initiating legal action ten days later on June 22.

## III. CONCLUSION

For the foregoing reasons, ISS respectfully requests that this Court dismiss the instant

action. In the alternative, ISS requests that this Court transfer this action to the Western District of North Carolina for consolidation with C.A. No. C.A. No. 3:07-cv-00242-RJC-CH, or stay this Action pending final resolution of C.A. No. 3:07-cv-00242-RJC-CH.

Respectfully submitted this 7th day of September, 2007.

/s/ Joseph V. Cavanagh, III
Joseph V. Cavanagh, Jr. #1139
Kristin E. Rodgers #4842
Joseph V. Cavanagh, III #6907
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: (401) 831-8900
Facsimile: (401) 751-7542
jvc@blishcavlaw.com
ker@blishcavlaw.com
jvc3@blishcavlaw.com

**ATTORNEYS FOR DEFENDANT**
**ISS RESEARCH, LLC**

**OF COUNSEL:**

Lawrence C. Moore, III
N.C. Bar No. 21731
Seth W. Whitaker
N.C. Bar No. 32999

**ROBINSON, BRADSHAW & HINSON, P.A.**
One Independence Center, Suite 1900
101 North Tryon Street
Charlotte, North Carolina 28246
(704) 377-2536 (phone)
(704) 378-4000 (fax)

CERTIFICATE OF SERVICE

I hereby certify that on this 7th[th] day of September, 2007, an exact copy of the within document was electronically submitted to the Electronic Case Filing System of the United States District Court for its distribution to all counsel of record as follows:

Robert K. Taylor, Esq.
rkt@psh.com

/s/ Joseph V. Cavanagh, III