**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CASE NO. 07CV242**

**ISS RESEARCH, LLC**

**Plaintiff,**

**v.**

**LANG NATURALS, INC.**

**Defendant.**

**VERIFIED COMPLAINT**

Plaintiff alleges:

## I. NATURE OF ACTION

1. Plaintiff ISS Research, LLC ("ISS") sells sports nutrition products, including the "Oh Yeah" brand of high-protein bars. Defendant Lang Naturals, Inc. ("Lang"), a contract manufacturer of nutritional products, pursued ISS, attempting to sell ISS a beverage and pudding for the "Oh Yeah" brand. ISS rejected Lang's proposed supply agreement, never found any of Lang's samples acceptable, and never agreed to purchase any products from Lang. Nevertheless, Lang falsely represented to manufacturer Jasper Products, LLC ("Jasper") that ISS was a customer of Lang's. On the basis of that misrepresentation, Lang obtained Jasper's agreement not to do any business of any kind with ISS. Jasper is willing to discuss providing a beverage to ISS developed entirely independently of Lang, including a beverage based on a different protein source than that proposed by Lang. Lang has refused to release Jasper from the agreement not to sell to its "customer" ISS. Further, Lang has falsely asserted that ISS agreed to pay Lang for its development costs, that ISS owes Lang at least $122,621 for such costs, and that ISS is liable under other theories as well.

2. Accordingly, as discussed more fully herein, ISS brings this action to obtain preliminary and permanent injunctive relief, damages, and any other appropriate relief for Lang's anticompetitive, tortious, and unfair and deceptive acts. ISS also seeks a judgment declaring that it never agreed to pay Lang for development costs, and owes Lang nothing on any of the theories Lang has advanced.

## II. PARTIES AND JURISDICTION

3. ISS is a North Carolina limited liability company with its principal place of business in Charlotte, North Carolina.

4. Lang is, upon information and belief, a Rhode Island corporation with its principal place of business in Middletown, Rhode Island.

5. ISS asserts claims under the Sherman Act, and pursuant to state-law causes of action that are ancillary to the claims asserted under the Sherman Act. Therefore, this Court has subject-matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367. This Court also has subject-matter jurisdiction pursuant to 28 U.S.C. §1332 in that the parties are of diverse citizenship, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. Venue is proper in this district pursuant to 28 U.S.C. §1400(a) because Lang is doing business in and may be found in this district.

## III. BACKGROUND FACTS INCORPORATED INTO CLAIMS FOR RELIEF

7. ISS markets sports nutrition products, including the highly successful "Oh Yeah" brand. "Oh Yeah" products are distinguished by their excellent taste and high quality. In early 2006, ISS retained Bill Hilts as a consultant. Hilts, who was then doing business under the name Nutragenix, has expertise in the commercialization of nutritional products. In June 2006, Hilts

became an ISS employee.

8. Sports nutrition products are specialty foods, handled by a few distributors, retail chains, and internet sites that ultimately cater to fitness-conscious consumers, including bodybuilders. Sports nutrition products are primarily sold in gyms and health food stores. They do not compete with mass-marketed foods and are not handled by the same distribution chain, but rather constitute a niche market.

9. Lang is a contract manufacturer of nutritional products. Early in 2006, Lang brought Hilts to Lang's office for a meeting. During the meeting, Lang indicated an interest in providing products to ISS, including a beverage, and asked Hilts if he knew of projects on which Lang could work with ISS.

10. Hilts informed Ron McAfee, president of ISS, of Lang's interest. Hilts and McAfee met with Lang on March 6, 2006. Lang represented that it was familiar with the market for sports nutrition products. Lang also represented that it was a low-margin, high-volume business that could develop and sell products to ISS at least as cheaply as if ISS purchased directly from manufacturers. Neither of those representations turned out to be true.

11. McAfee informed Lang that ISS was interested in, among other things, producing an "Oh Yeah" brand high-protein, moderate-carbohydrate, low-fat, low-acid meal replacement beverage (also referred to as a shake or as an "RTD" or "ready-to-drink" product), and an "Oh Yeah" brand high-protein pudding. ISS provided Lang with nutritional targets for the products.

12. ISS indicated that it wanted any RTD product it might purchase to be packaged in plastic bottles. Lang indicated that no manufacturing facility in the country that could produce such a product had any capacity, and that such a product would need to be in a Tetra Pak—a plastic-covered paperboard container.

13. ISS indicated that any pudding product it might purchase would need to have a one-year shelf life. Lang specifically represented that it had experience with high-protein products, and that it had a relationship with a pudding manufacturer that was at that time supplying a high-protein pudding and could produce a product with a one-year shelf life. Those representations were false.

14. Lang never produced a sample beverage or pudding that ISS found acceptable, or that ISS could sell to its distributors.

15. In April 2006, Lang sent ISS a proposed Product Supply Agreement. ISS never signed the agreement. Instead, ISS informed Lang that numerous provisions of the proposed agreement were unacceptable, including its provision that Lang would retain ownership of any formula, its complete ban on ISS's doing business with the companies manufacturing for Lang (who were not to be disclosed to ISS), and its provision for ISS to guarantee to purchase specified volumes of product from Lang. ISS also indicated that Lang's price was too high.

16. Lang never quoted a price on beverages or puddings that would allow ISS to sell them at a price comparable to that charged for other sports nutrition RTD shakes or puddings.

17. Jasper is a beverage manufacturer that can produce a high-protein, low-acid beverage in plastic or Tetra Paks. Despite ISS's refusal to sign the proposed Product Supply Agreement and rejection of the Lang samples, Lang (without ISS's knowledge) represented to Jasper in August 2006 that ISS was a customer of Lang's. On information and belief, on the basis of Lang's misrepresentation to Jasper, Jasper agreed not to manufacture any products for ISS, of any type. Lang never indicated to ISS that Jasper was a supplier to Lang, or even mentioned Jasper to ISS at all.

18. Lang volunteered to continue providing sample products to ISS in the absence of

an agreement governing the development or supply of any products, in an attempt to persuade ISS to purchase products from it. Lang sent the samples to ISS at its principal place of business in Charlotte, North Carolina. At no point did ISS agree to pay Lang for the costs of developing the samples. To the contrary, Lang indicated in an email that it was not charging ISS for developing the samples.

19. In September 2006, three representatives of Lang came to Charlotte to meet with ISS. ISS again told Lang at that meeting that the Proposed Supply Agreement was not acceptable. Lang indicated it would provide a revised draft agreement, but never did so.

20. In the fall of 2006, two of ISS's major customers indicated that they would like to purchase an "Oh Yeah" shake packaged in plastic. ISS informed Lang that any beverage ISS might purchase would need to be packaged in plastic. Lang indicated that it had located a manufacturer with some capacity to produce a beverage packaged in plastic, but quoted a price that would not allow ISS to be competitive.

21. Also in the fall of 2006, two other sports nutrition companies came out with high-protein, low-acid RTD beverages, packaged in Tetra Paks, at a price sufficiently low to demonstrate that Lang's price on Tetra Paks was not competitive. On information and belief, both are manufactured at Jasper.

22. ISS had requested early on to be involved in the process of formulating products for its "Oh Yeah" brand. Lang had refused to allow ISS to participate. In the fall of 2006, for the first time, Lang provided to ISS a proposed list of ingredients for its RTD beverage. ISS then learned that Lang proposed to make the beverage with maltitol—a form of sugar alcohol. ISS informed Lang that it could not at that time successfully sell a beverage with maltitol in the sports nutrition market—which Lang should have known based on its professed experience.

23. Lang sent more sample beverages without sugar alcohol, but ISS and its biggest customer, Europa, found them to be unacceptable. Lang stated that to improve the flavor of the product it would have to cease making prototypes, and make a test run of the product at a plant. Unlike the samples, Lang indicated that the test run would be at ISS's expense. ISS never consented to the test run, and Lang did not undertake it.

24. One of ISS's ingredient suppliers told ISS that Jasper could produce an RTD high-protein beverage, and could do so in a plastic container or in a Tetra Pak. Tom Morley, an independent formulator with whom ISS works, later offered to set up a meeting between ISS and Jasper.

25. At the meeting, held on Friday, May 11 2007, Jasper's president, Ken Haubein, expressed enthusiasm for the "Oh Yeah" bars, and indicated a willingness to supply ISS with a shake made with UF (ultrafiltered) milk. At no time did Lang offer to provide ISS a shake made with UF milk.

26. Jasper also indicated that was producing a beverage not made with UF milk at a price that ISS knew to be significantly less than that quoted by Lang to ISS. The price indicated by Jasper would be sufficiently low for ISS to provide a competitive price to its customers.

27. Lang never provided ISS with any product formula.

28. At no point did ISS disclose to Morley or Jasper information about the composition of any sample product it received from Lang, nor did ISS share with Morley or Jasper any sample ISS received from Lang.

29. The Monday following the meeting with Jasper, Haubein told ISS that Lang had learned of the meeting between Jasper and ISS, and had objected on the basis of the agreement between Lang and Jasper.

30. Hilts called Lang and asked that Lang release Jasper from the agreement, because ISS was not Lang's customer. Lang refused.

31. Counsel for ISS wrote Lang again requesting that Lang release Jasper from the agreement obtained by Lang's deception.

32. Counsel for Lang responded, rejecting ISS's request, and asserted that ISS was "liable in damages for breach of contract, tortious interference with Lang's relationship with Jasper, and bad faith." Counsel for Lang asserted that ISS owed Lang at least $122,621 for costs allegedly incurred in developing sample products.

33. Manufacturing facilities must be certified by the FDA before they can produce and package low-acid beverages.

34. Aside from Jasper, there are only two facilities in the United States that can produce a low-acid shake packaged in plastic for an outside company. On information and belief, both of the other facilities require minimum volume purchases that preclude ISS from using them as manufacturers, neither can produce a product made with UF milk, and neither has any capacity. Jasper is therefore the only facility that can produce a high-protein, low acid RTD beverage packaged in plastic for a company such as ISS.

35. Aside from Jasper, on information and belief, there are only three other facilities that can produce a low-acid beverage in a Prisma Tetra Pak for an outside company, which is the only form of Tetra Pak that ISS's customers will accept. One of them is in California, from which shipping is prohibitively expensive. One of the other two has informed ISS that it has no capacity. The third has not returned ISS's calls, and ISS has been informed that it is going out of business.

## CLAIM ONE

### Customer Allocation — Per Se Violation (Sherman Act, Section 1)

36. The Plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

37. Lang is a contract manufacturer of nutritional products, and offered to provide ISS with an RTD beverage for its "Oh Yeah" brand. Jasper is also a manufacturer of nutritional products that can provide ISS with a different RTD beverage for its "Oh Yeah" brand. With regard to ISS, Lang and Jasper are therefore horizontal competitors.

38. The agreement Lang procured from Jasper not to sell any products of any type to ISS constitutes an allocation of a customer between horizontal competitors, and is therefore "per se" illegal.

39. The agreement Lang procured from Jasper constitutes an illegal group boycott of ISS, or concerted refusal to deal, which is "per se" illegal.

40. The agreement Lang procured from Jasper has affected a not insubstantial amount of interstate commerce in the supply of nutritional products.

41. The agreement Lang procured from Jasper injures ISS by foreclosing it from the only viable provider of a high protein, low-acid RTD beverage. ISS is being damaged by its inability to sell a product as part of its established and successful "Oh Yeah" brand, for which there is demand from its customers.

42. ISS is entitled to an award of preliminary and permanent injunctive relief to enjoin the enforcement of the anticompetitive agreement procured by Lang through its misrepresentation to Jasper.

43. In addition thereto, ISS is entitled to recover monetary damages from the defendant reflecting treble actual damages incurred as a result of Lang's anticompetitive conduct.

**CLAIM TWO**

**Rule of Reason Violation (Sherman Act, Section 1)**

44. The Plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

45. If the agreement Lang procured from Jasper is not per se unlawful, it is unlawful under the rule of reason, in that the anticompetitive consequences outweigh any pro-competitive effects thereof. The agreement was obtained on the false pretense that ISS is a customer of Lang's. To the extent the agreement is intended to protect Lang's proprietary information, it is unnecessary—since Lang never shared its formulas or other such information—and overbroad, since the agreement prohibits Jasper from supplying *any* product to ISS, including products entirely unrelated to any work performed by Lang.

46. High-protein RTD beverages are heavy, and carry high shipping costs. As a result, it is not economically feasible for ISS to purchase products made on the West Coast. In addition to having high shipping costs, foreign manufacturers' products are subject to extensive regulation, including under the Bioterrorism Act of 2002, which makes them an unreliable source of supply. The geographic market therefore consists of U.S. manufacturers not on the West Coast.

47. A low-acid, high-protein, moderate-carbohydrate, low-fat RTD sports nutrition beverage, made with UF milk and packaged in plastic, would comprise a new product market. Lang and Jasper have market power in that market. The agreement Lang procured from Jasper

injures ISS by foreclosing it from the only viable provider of such a beverage. ISS is being damaged by its inability to sell such a product as part of its established and successful "Oh Yeah" brand, for which there is demand from its customers.

48. In the alternative, the product market consists of low-acid, high-protein, moderate-carbohydrate, low-fat RTD sports nutrition beverages. Lang and Jasper have market power in that market. The agreement Lang procured from Jasper injures ISS by foreclosing it from the only viable provider of such a beverage. ISS is being damaged by its inability to sell such a product as part of its established and successful "Oh Yeah" brand, for which there is demand from its customers.

49. Jasper is the only viable potential supplier of a low-acid RTD beverage to ISS, and therefore is an essential facility, from which Lang's conduct has foreclosed ISS. The injury caused by Lang's actions is an intended, and inevitable, consequence of foreclosing ISS from doing business with Jasper.

50. The effect of Lang's actions is to create a barrier to entry into the relevant market, injuring ISS, its customers, and the consuming public.

51. If the agreement to refuse to deal with ISS that Lang procured from Jasper is not "per se" illegal, it is unlawful under the rule of reason, in that the anticompetitive effects of Lang's conduct outweigh the pro-competitive effects.

52. ISS is entitled to an award of preliminary and permanent injunctive relief to enjoin the enforcement of the anticompetitive agreement procured by Lang.

53. In addition thereto, ISS is entitled to recover monetary damages from the defendant reflecting treble actual damages incurred as a result of Lang's anticompetitive conduct.

**CLAIM THREE**

**Attempt to Monopolize (Sherman Act, Section 2)**

54. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

55. Lang has attempted to monopolize the market for low-acid, high-protein, moderate-carbohydrate, low-fat RTD sports nutrition beverages, and there is a dangerous possibility of success in violation of Section 2 of the Sherman Act.

**CLAIM FOUR**

**(Unfair and Deceptive Trade Practices under § 75-1.1 or Other Applicable State Laws)**

56. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

57. The conduct of Lang, as described above, constitutes unfair and deceptive trade practices and violates N.C. Gen. Stat. §§75-1.1 *et seq*. Lang's actions are deceptive, misleading, unfair, and have been undertaken intentionally or with reckless disregard for ISS's rights. Lang's actions further constitute an inequitable assertion of its power or position.

58. The wrongful actions of Lang as alleged in this Claim are causing continuing, irreparable, and immeasurable injury to ISS.

59. ISS is entitled to an award of preliminary and permanent injunctive relief to halt Lang's wrongful actions.

60. Alternatively or in addition thereto, ISS is entitled to recover monetary damages from the defendant reflecting actual damages incurred by the plaintiff as a result of the defendant's wrongful actions.

61. Alternatively, in the event that the laws of other states similar to N.C. Gen. Stat. § 75-1.1, or otherwise prohibiting unfair competition, are deemed to govern Lang's actions, then defendant has violated such other laws as well, and plaintiff is entitled to appropriate relief and recovery thereunder.

**CLAIM FIVE**

**(Tortious Interference with Prospective Economic Advantage)**

62. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

63. ISS's existing customers have expressed an interest in purchasing an "Oh Yeah" brand low-acid, high-protein, moderate-carbohydrate, low-fat RTD beverage.

64. ISS's discussions with Jasper give rise to a legitimate prospect of economic advantage for ISS.

65. Lang's conduct has, without justification, prevented ISS from entering into a contract with Jasper, and prevented ISS from selling an "Oh Yeah" brand low-acid, high-protein, moderate-carbohydrate, low-fat RTD beverage.

66. The defendant's wrongful and unlawful interference with ISS's relationship with Jasper has caused both (i) irreparable injury to plaintiff, and (ii) damages to plaintiff that can only be measured in part.

**CLAIM SIX**

**(Declaratory Judgment—No Breach of Contract)**

67. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

68. There exists an actual controversy as to whether ISS agreed to pay Lang for the development of sample products Lang sent to ISS. Lang has asserted that ISS has done so, and has demanded payment therefor.

69. Contrary to Lang's assertions, ISS did not agree, in any way, to pay Lang for any of its development costs. Accordingly, ISS requests a judicial determination of its obligations regarding Lang's development costs.

70. To resolve the legal and factual questions raised by Lang, and to afford relief from the uncertainty and controversy that Lang's accusations have caused, ISS is entitled to a declaratory judgment that it is not liable, under contract or quantum meruit, for Lang's development costs.

**CLAIM SEVEN**

**(Declaratory Judgment—No Tortious Interference With Contract)**

71. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

72. There exists an actual controversy as to whether ISS has tortiously interfered with Lang's contract with Jasper. Lang has asserted that ISS has done so by copying Jasper on the letter requesting Lang to release Jasper from the agreement Lang wrongfully procured forbidding Jasper from doing any business with ISS. Lang has stated that it will take action to hold ISS accountable for damages ISS has thereby caused.

73. Contrary to Lang's assertions, ISS has not wrongfully injured Lang in its relationship with Jasper. The contractual provision of which ISS has complained was procured by Lang's deception, is anticompetitive, and is not valid. ISS's conduct was therefore justified. Further, ISS has not caused Jasper to breach its agreement with Lang, nor has it caused any

damage to Lang. Accordingly, ISS requests a judicial determination whether it has tortiously interfered with Lang's contract with Jasper.

74. To resolve the legal and factual questions raised by Lang, and to afford relief from the uncertainty and controversy that Lang's accusations have caused, ISS is entitled to a declaratory judgment that it is not liable for tortiously interfering with Lang's relationship with Jasper.

**CLAIM EIGHT**

**(Declaratory Judgment—No Bad Faith)**

75. The plaintiff incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

76. There exists an actual controversy as to whether ISS is liable to Lang for "bad faith." Lang has asserted that ISS is liable to it in damages for "bad faith."

77. Contrary to Lang's assertions, ISS has not acted in bad faith, and has not damaged Lang. Further, there is no such cause of action. Accordingly, ISS requests a judicial determination whether it is liable for "bad faith."

78. To resolve the legal and factual questions raised by Lang, and to afford relief from the uncertainty and controversy that Lang's accusations have caused, ISS is entitled to a declaratory judgment that it is not liable for "bad faith."

**Prayer For Relief**

WHEREFORE, Plaintiff ISS Research, LLC prays for relief, as follows:

1. For damages according to proof, with interest, trebled pursuant to 15 U.S.C. § 15 and N.C. Gen. Stat. §75-16;

2. For a declaration that ISS is not liable, under contract or quantum meruit, for Lang's development costs;
3. For a declaration that ISS is not liable for tortiously interfering with Lang's relationship with Jasper;
4. For a declaration that ISS is not liable for bad faith;
5. For an appropriate injunction pursuant to 15 U.S.C. § 26, Fed. R. Civ. P. 65 and the Court's inherent power permanently enjoining Lang from engaging in the anticompetitive and tortious conduct set forth herein and enforcing the declarations prayed for above;
6. For attorney's fees and recoverable costs and other expenses; and
7. For such further relief as the Court may deem just and proper.

**JURY DEMAND**

ISS demands a trial by jury of all issues so triable by right to a jury.

This 22nd day of June, 2007.

/s/ Lawrence C. Moore, III
Lawrence C. Moore, III
N.C. Bar No. 21731
Seth W. Whitaker
N.C. Bar No. 32999

**ROBINSON, BRADSHAW & HINSON, P.A.**

One Independence Center, Suite 1900
101 North Tryon Street
Charlotte, N.C. 28246
704-377-2536 (phone)
704-378-4000 (fax)

Attorneys for Plaintiff

**VERIFICATION**

I am Ronald McAfee, Jr. of Plaintiff ISS Research, LLC. The allegations in the foregoing Complaint are true to my own knowledge, except those that are alleged upon information and belief or that refer to actions undertaken solely by Bill Hilts, which I believe to be true. I verify under penalty of perjury that the foregoing is true and correct.

Executed this 22 day of June, 2007 in Charlotte, North Carolina.

Ronald McAfee, Jr.
President
ISS Research, LLC

**VERIFICATION**

I am Basil W. ("Bill") Hilts of Plaintiff ISS Research, LLC. The allegations in the foregoing Complaint that refer to me are true to my own knowledge. I verify under penalty of perjury that the foregoing is true and correct.

Executed this 22 day of June, 2007 in Charlotte, North Carolina.

Basil W Hilts

Basil W. Hilts
Director of Technical Services
ISS Research, LLC